IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| FRANCKNEL ELIZAIRE, et al., | : | |
| | : | |
| Plaintiffs, | : | CIVIL ACTION |
| | : | |
| v. | : | NO. 17-3945 |
| | : | |
| THE TRAVELERS COMPANIES d/b/a TRAVELERS, | : | |
| | : | |
| Defendant. | : | |

**MEMORANDUM**

Tucker, J.                                                                                          December 14, 2017

Before the Court are the following:

1. Plaintiffs' Complaint, attached as Exhibit A to Defendants' Notice of Removal to the United States District Court for the Eastern District of Pennsylvania (Doc. 1);[1]

2. Defendant's Motion to Dismiss Plaintiffs' Complaint ("Motion to Dismiss") (Doc. 4);

3. Defendant's Brief in Support of its Motion to Dismiss Plaintiffs' Complaint (Doc. 5);

4. Plaintiffs' Response to Defendant's Motion to Dismiss Plaintiffs' Complaint and accompanying Memorandum of Law in Support of Plaintiffs' Response to Defendant's Motion to Dismiss Plaintiffs' Complaint (Doc. 6); and

5. Defendant's Reply Memorandum of Law in Support of its Motion to Dismiss Plaintiffs' Complaint (Doc. 11).

---

[1] All citations to Plaintiffs' Complaint are to the Complaint attached as Exhibit A to Defendant's Notice of Removal to the United States District Court for the Eastern District of Pennsylvania (Doc. 1).

1

Upon consideration of the Parties' submissions, and for the reasons set forth below, Defendant's Motion to Dismiss is GRANTED and Plaintiffs' Complaint is DISMISSED WITH PREJUDICE.

I.      FACTUAL AND PROCEDURAL BACKGROUND

On April 28, 2015, Plaintiff Naomie Elizaire ("Mrs. Elizaire") was injured in a car accident. Compl. ¶ 11, Doc. 1. Mrs. Elizaire's injuries and losses from the accident exceeded the $15,000 bodily injury liability limit payment that Mrs. Elizaire received from the insurer of the person responsible for the accident. Compl. ¶¶ 12, 13, Doc. 1. For this reason, Mrs. Elizaire and her husband Francknel Elizaire sought additional compensation from their own insurance company, Defendant The Automobile Insurance Company of Hartford, Connecticut ("Travelers"), under their car insurance policy bearing number 0M2666-993650294-203-1 ("Policy"). Compl. ¶¶ 5, 24, Doc. 1.

Plaintiffs requested that Travelers pay $300,000 to Plaintiffs. This $300,000 constituted the full "stacked underinsured motorist coverage" limit under the Policy. Compl. ¶ 24, Doc. 1. Travelers refused payment and explained that Plaintiffs did not qualify for stacked underinsured motorist coverage because Plaintiffs rejected such coverage by executing a "Rejection of Underinsured Motorist Coverage" form ("Travelers Rejection Form") at the time they purchased the Policy. Compl. ¶ 26, Doc. 1. The Travelers Rejection Form appeared on a page separate from the rest of the Policy. The Travelers Rejection Form reads:

**Pennsylvania Rejection of Underinsured Motorists Coverage**

**For: FRANCKNEL & NAOIMIE ELIZAIRE              State/Zip: PA 19021**

Underinsured motorists protection is insurance coverage you may purchase that protects only you and your family if you or they are injured by a negligent driver who does not have enough bodily injury liability insurance to cover your claims. This coverage is optional. However, we are required to include it in your policy unless you take steps to reject it.

2

> If you do not want this coverage, the insured named first on the application or the declarations page must sign and date the rejection of underinsured motorists protection below. If you want to keep this coverage, do not sign this waiver and go to the next page.
>
> **Rejection of Underinsured Motorists Protection**
>
> By signing this waiver I am rejecting underinsured motorists coverage under this policy, for myself and all relatives residing in my household. Underinsured coverage protects me and relatives living in my household for losses and damages suffered if injury is caused by the negligence of a driver who does not have enough insurance to pay for all losses and damages. I knowingly and voluntarily reject this coverage.
>
> _____    _____
> Signature of First Named Insured        Date

Def.'s Br. in Supp. of its Mot. to Dismiss Ex. 2, Doc. 5. Indeed, Plaintiffs admit that on February 23, 2015, Francknel Elizaire signed and dated the Travelers Rejection Form. Pls.' Resp. to Def.'s Mot. to Dismiss ¶ 8, Doc. 6.[2] Despite demand, Travelers, citing the signed and dated Travelers Rejection Form, ultimately refused to pay Plaintiffs. Compl. ¶ 26, Doc. 1.

Plaintiffs accordingly filed suit in the Court of Common Pleas for Philadelphia County seeking a judgment declaring Plaintiffs entitled to stacked underinsured motorist coverage equaling $300,000. *See generally* Compl., Doc. 1. In apparent recognition that the Plaintiffs' execution of the Travelers Rejection Form would normally bar Plaintiffs' requested relief, Plaintiffs allege that the language of the Travelers Rejection Form violates Pennsylvania law and is, therefore, invalid and unenforceable. Compl. ¶ 22, Doc. 1. Plaintiffs allege that the Travelers Rejection Form is invalid and unenforceable because it fails to comply specifically with the

---

[2] Although Travelers also provided a "Rejection of Underinsured Motorists Coverage Stacked Limits" form ("Travelers Rejection of Stacked Limits Form") to Plaintiffs, Plaintiffs did not execute the form because they had already rejected underinsured coverage by virtue of signing the Travelers Rejection Form. *See* Compl. ¶ 6, Doc. 1 (alleging that Travelers agent provided both Travelers Rejection Form and a Travelers Rejection of Stacked Limits Form to Plaintiffs at the same time).

statutorily prescribed language for such rejection forms under 75 Pa. Stat. and Cons. Stat. Ann. § 1731(c) (West 2017).[3]

Later, Travelers removed the action to this Court in a timely manner on the basis of diversity. Travelers then filed the present Motion to Dismiss. Travelers ultimately contends that the Travelers Rejection Form is valid and enforceable against Plaintiffs, that Plaintiffs wholly rejected underinsured motorist protection under the Policy, and, therefore, Plaintiffs' Complaint should be dismissed. For the reasons set forth below, the Court agrees.

## II. STANDARD OF REVIEW

As a general matter, to survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 554, 570 (2007)). A complaint is plausible on its face when its factual allegations allow a court to draw a reasonable inference that a defendant is liable for the harm alleged. *Santiago v. Warminster Twp.*, 629 F.3d 121, 128 (3d Cir. 2010). The court must accept as true all factual allegations contained in a complaint and interpret them in the light most favorable to the plaintiff. *Argueta v. U.S. Immigration & Customs Enf't*, 643 F.3d 60, 74 (3d Cir. 2011). While this means that a court is generally constrained to the allegations in the complaint, the court may consider certain matters outside the pleadings such as documents "*integral to or explicitly relied upon* in the complaint." *Schmidt v. Skolas*, 770 F.3d 241, 249

---

[3] Plaintiffs further contend that the language of Travelers Rejection of Stacked Limits Form also violates 75 Pa. Stat. and Cons. Stat. Ann. § 1738(d) because the Travelers Rejection of Stacked Limits Form fails to comply with the form waiver provided under 75 Pa. Stat. and Cons. Stat. Ann. § 1738(d)(2). The Court need not address this contention, however, because the Court concludes, as discussed in detail below, that the Travelers Rejection Form is valid and enforceable. As the Travelers Rejection Form is valid and enforceable, Plaintiffs rejected underinsured motorist protection and, therefore, cannot claim entitlement to stacking of any such underinsured motorist protection.

(3d Cir. 2014) (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997)).

Regarding insurance contract cases, "the court may grant a motion to dismiss where the insurance contract unambiguously reveals the insured is not entitled to coverage." *Frog Switch & Mfg. Co., Inc. v. Travelers Ins. Co.*, 193 F.3d 742, 745 n.1 (3d Cir.1999). Indeed, "under Pennsylvania law, the interpretation of an insurance contract is a matter of law for the court." *Lexington Ins. Co. v. Western Pennsylvania Hosp.*, 423 F.3d 318, 323 (3d Cir. 2005) (citing *Madison Constr. Co. v. Harleysville Mut. Ins. Co.*, 735 A.2d 100, 106 (Pa. 1999)). When interpreting an insurance contract, the Court must give effect to all clear and unambiguous language in the insurance contract. *Id.* While ambiguous language, to the extent that it may exist in an insurance contract, must be construed against the insurer, "the Third Circuit Court of Appeals and the Pennsylvania Supreme Court have repeatedly warned courts against straining to find ambiguity in insurance contract language." *Fireman's Fund Ins. Co. v. Zurich Am. Ins. Co.*, 2011 WL 2937421, *3 (E.D. Pa. Jul. 19, 2011) (citing *Lexington Ins. Co.*, 423 F.3d at 323); *see also St. Paul Fire and Marine Ins. Co. v. U.S. Fire Ins. Co.*, 655 F.2d 521, 524 (advising that a "court should read policy provisions to avoid ambiguities, if possible, and not torture the language to create them").

**III.   DISCUSSION**

The issue presented by the Motion to Dismiss is whether the Travelers Rejection Form specifically complies with § 1731 so as to operate as a valid waiver of underinsured motorist coverage. The Court ultimately concludes that the Travelers Rejection Form specifically complies with the requirements of § 1731 because the additional language, contained on the same page as the statutory form rejection language, is inconsequential. The additional language

is inconsequential because it: (1) does not create ambiguity, (2) it does not modify the scope of coverage under the Policy, and (3) it does not contravene Plaintiffs or Travelers' understanding of what coverage is provided under the Policy or undermine Plaintiffs' understanding of the consequences of their decision to sign the waiver.

Under § 1731 car insurance companies must provide all insureds with underinsured motorist coverage. 75 Pa. Stat. and Cons. Stat. Ann. § 1731(c). The insured, however, may affirmatively choose to reject such coverage by executing a written rejection form. *Id.*[4] Indeed, § 1731 provides that the "named insured shall be informed that he may reject underinsured motorist coverage by signing" a written rejection form. *Id.* A written rejection form is provided by statute. *Id.* The statutory rejection form reads:

**REJECTION OF UNDERINSURED MOTORIST PROTECTION**

> By signing this waiver I am rejecting underinsured motorist coverage under this policy, for myself and all relatives residing in my household. Underinsured coverage protects me and relatives living in my household for losses and damages suffered if injury is caused by the negligence of a driver who does not have enough insurance to pay for all losses and damages. I knowingly and voluntarily reject this coverage.
>
> _____
> Signature of First Named Insured
>
> _____
> Date

75 Pa. Stat. and Cons. Stat. Ann. § 1731(c). Insurers are to "print the rejection form[] required by subsection . . . (c) on [a] separate sheet[] in prominent type and location." *Id.* at § 1731(c.1). In order for the rejection form to be valid, it "must be signed by the first named insured and

---

[4] Generally, waiver of underinsured motorist coverage results in lower insurance premiums. *See Vinh Thanh Ho v. Allstate Indem. Co.*, 30 F. Supp. 3d 361, 367 (E.D. Pa. 2014) (explaining that the plaintiff received lower premiums by electing to forego underinsured motorist coverage); *Robinson v. Travelers Indem. Co.*, 520 Fed. App'x 85, 88 (explaining that plaintiff intended to reject underinsured motorist coverage to lower plaintiff's insurance premium).

dated." *Id.* Failure by the insurer to provide a rejection form to the insured results in automatic coverage under the subject policy equal to "the bodily injury liability limits." *Id.* Finally, § 1731(c.1) provides that "any rejection form that does not specifically comply with this section is void." *Id.*

Recently, the Pennsylvania Supreme Court clarified the standard that courts must apply when evaluating whether a particular rejection form "specifically compl[ies] with" the requirements of § 1731. In *Ford v. Am. States Insur. Co.*, the Pennsylvania Supreme Court determined that an insurer's addition of the word "motorist" directly into the § 1731(c) form language as well as the addition of the letter "s" to the word "motorist" in the heading of the statutory form did not render the insured's waiver ineffective because these additions were inconsequential. 154 A.3d 237, 245 (Pa. 2017).[5] The Pennsylvania Supreme Court held that:

> when a UIM rejection form differs from the statutory form in an inconsequential manner, the form will be construed to specifically comply with Section 1731 . . . . such a form does not modify coverage or inject ambiguity into the statutory form, and an insured's signature on the slightly altered form demonstrates that the insurer offered UIM coverage to the insured and that the insured understood what she was doing when she declined that coverage.

*Id.* Thus, the Pennsylvania Supreme Court rejected any suggestion that § 1731 requires that insureds sign a verbatim reproduction of the form contained in § 1731(c) in order for the insured to waive underinsured motorist coverage. *Id.* The Pennsylvania Supreme Court reasoned that by

---

[5] Before reaching its conclusion, the Pennsylvania Supreme Court provided a survey of prior cases cited by the parties, and on which the courts below relied, relating to the interpretation of rejection forms under § 1731. Among other cases, the Pennsylvania Supreme Court reviewed: *Am. Int'l Ins. Co. v. Vaxmonsky*, 916 A.2d 1106 (Pa. Super. Ct. 2006) (holding that insurer's deletion of the word "all" from the phrase "all losses and damages" contained in the form rejection language of § 1731(c) invalidated the waiver); *Jones v. Unitrin Auto & Home Ins. Co.*, 40 A.3d 125 (Pa. Super. Ct. 2012) (holding that insurer's addition of a full sentence into the form rejection language of § 1731(c) did not invalidate the waiver); *Robinson v. Travelers Indem. Co.*, 520 F. App'x 85 (3d Cir. 2013) (holding that addition of the letter "s" to the word "motorist" in the heading of the statutory form did not render the insured's waiver ineffective).

7

enacting language specifying that "any rejection form that does not specifically comply with <u>this section</u> is void" as opposed to language specifying "<u>the statutory rejection form found in Subsection 1731(c)</u>" the Pennsylvania General Assembly made clear that insurers need not employ verbatim forms. *Id.* (emphasis added). Indeed, the Pennsylvania Supreme Court explained that:

> Section 1731 of the MVFRL clearly and unambiguously expresses the General Assembly's intention to require an insurer to offer to an insured the option of purchasing UIM coverage and to make certain that, if an insured decides to reject UIM coverage, the insured does so by signing a rejection form that explains what coverage the insured is waiving as a result of her decision.

*Id.* Although the Pennsylvania Supreme Court's decision provides some leeway to insurers in drafting their underinsured motorist coverage forms, the Pennsylvania Supreme Court made sure to echo the sound guidance of other courts by noting that "it is ill-advised for an insurer to present an insured with a UIM coverage rejection form that changes the statutory form in any way." *Id.*[6] Accordingly, an alteration of the form rejection language under § 1731 will not invalidate a waiver unless the alteration is of consequence in that it modifies insurance coverage, injects ambiguity into the form, or otherwise undermines the parties' understanding of what the insured is "waving as a result of her decision" to sign the rejection form. *Id.*

While the decision in *Ford* guides courts in their analysis, it is also helpful to consider, as the Pennsylvania Supreme Court considered in deciding *Ford*, earlier cases and the courts treatment of particular additions and/or alterations in insurer-drafted rejection forms in order to understand the metes and bounds of § 1731(c.1)'s requirement of specific compliance. A review of the cases in which courts have considered alterations to rejection forms shows that, consistent

---

[6] *See also Robinson v. Travelers Indemnity Co.*, 520 F. App'x 85, 88–89 (3d Cir. 2013) (quoting *Unitrin Auto & Home Insurance Co. v. Heister*, 2005 WL 2314372, at *4 (M.D. Pa. Sept. 22, 2005) (noting that "it is undoubtedly a 'better practice . . . for insurance companies *not* to supplement the required language of § 1731'").

8

with the Pennsylvania Supreme Court's decision in *Ford*, it is not the length of an addition, breadth of a deletion, or the location of any addition or deletion in the statutory form language that is dispositive on the issue of specific compliance. Instead, whether an insurer-drafted rejection form specifically complies with § 1731 turns on whether the insurer-drafted rejection creates ambiguity, alters coverage, or otherwise undermines the parties' understanding of the consequences of signing the rejection form.

In *Vaxmonsky*, the Pennsylvania Superior Court considered an insurer's rejection of underinsured motorist coverage form that deleted the word "all" from the statutory rejection form. 916 A.2d 1106. The word "all" was deleted from the sentence, taken from § 1731(c), that reads: "Underinsured coverage protects me and relatives living in my household for losses and damages suffered if injury is caused by the negligence of a driver who does not have enough insurance to pay for <u>all</u> losses and damages." *Id.* at 1107 (emphasis added). In concluding that this alteration invalidated the insured's waiver, the Superior Court reasoned that the deletion of the word "all," while seemingly insignificant, in fact "limited coverage . . . and therefore imposed ambiguity where none existed." *Id.* at 1109.

Similarly, in *Unitrin*, the Pennsylvania Superior Court found that an insurer's insertion of a sentence into the subject rejection form that was entirely unrelated to the rejection of underinsured motorist coverage invalidated the effectiveness of an insured's waiver. 40 A.3d 125. The insurer inserted into the statutory rejection language the following sentence: "By rejecting this coverage, I am also signing the waiver on P. 13 rejecting stacked limits of underinsured motorist coverage." *Id.* at 128. The Superior Court held that the addition of this sentence constituted a "deviation from the proximal relationship of the components" of the UIM rejection form required by § 1731 and, therefore, the rejection form was void. *Id.* at 131. In

9

essence, the additional sentence was irrelevant to the underinsured motorist coverage at issue and, thus, the additional sentence created ambiguity regarding what the insured was or was not waiving in executing the waiver. *See id.* at 130 n.5 (providing that the additional sentence "conflates the issues of underinsurance coverage and underinsurance stacking and adds ambiguity to the UIM rejection form where in its absence none existed.").

By contrast, in *Vinh Thanh Ho*[7] and *King v. U.S. Xpress, Inc.*,[8] the courts found that the addition of one and two sentences, respectively, into the § 1731(c) form language did not invalidate the effectiveness of the insureds' waivers.

In *Vinh Thanh Ho*, the insurer inserted a full sentence between the statutory heading and the start of the statutory language. Specifically, the insurer added the following to the form language: "If you desire to reject this coverage entirely, you must sign the waiver below". 30 F. Supp. 3d at 364. The court concluded that the additional sentence did not invalidate the waiver because the sentence pertained to the subject at hand, that is, the sentence related to the rejection of underinsured motorist coverage, and because the sentence served "to clarify and emphasize the gravity of the decision to reject UIM coverage." *Id.* at 367.

In *King*, the court considered whether an insurer's addition of two phrases directly into the statutory rejection form for uninsured motorist coverage under § 1731(b)[9] invalidated the insured's waiver of uninsured motorist coverage. 205 F. Supp. 3d 675. The insurer added to the statutory rejection language the following identified in bold and italics:

> By signing this waiver I am rejecting uninsured motorist coverage under this policy for myself and all relatives residing in my househould ***and all persons***

---

[7] 30 F. Supp. 3d 361, 367 (E.D. Pa. 2014).
[8] 205 F. Supp. 3d 675 (E.D. Pa. 2016), *appeal filed*.
[9] Section 1731(b) contains a nearly verbatim rejection form for uninsured motorist coverage as the rejection form for underinsured motorist coverage under the section at issue in this case, § 1731(c).

> *driving or working under the authority of any named insured or riding as a passenger in an insured vehicle*. Uninsured coverage protects me and relatives residing in my household for losses and damages suffered if injury is caused by the negligence of a driver who does not have any insurance to pay for losses and damages. I knowingly and voluntarily reject this coverage *for all insured drivers, and I act on full authority of all insureds under this commercial auto policy*.

*Id.* at 679 (emphasis added). Despite the insertion of these two phrases directly into the statutory rejection language, the court held that the additions did not invalidate the insured's waiver of uninsured motorist coverage. *Id.* at 680. In fact, the additional language "enhance[d] the clarity of the waiver" by making explicit the commercial rather than personal nature of the insurance policy and the insured's waiver. *Id.*

In this case, the additional language in the Travelers Rejection Form constitutes an inconsequential deviation from the statutory rejection language and, therefore, the Travelers Rejection Form is a valid and effective waiver of Plaintiffs' underinsured motorist coverage under the Policy. The additional language in the Travelers Rejection Form constitutes an inconsequential deviation because it: (1) does not create ambiguity, (2) it does not modify the scope of coverage under the Policy, and (3) it does not contravene either Plaintiffs' or Travelers' understanding of what coverage is provided under the Policy nor does it contravene Plaintiffs' understanding of the consequences of signing the waiver.

As discussed above, although there is no requirement that an insured sign a verbatim reproduction of the statutory rejection language provided by § 1731(c) for the insured to waive underinsured motorist coverage, the Travelers Rejection Form, in fact, contains a verbatim reproduction of the statutory rejection language. Def.'s Br. in Supp. of its Mot. to Dismiss Ex. 2, Doc. 5. The third paragraph of the Travelers Rejection Form matches, word-for-word, the statutory rejection language under § 1731(c). Indeed, the third paragraph is followed immediately by Plaintiffs' signature and date mirroring the layout of the statutory rejection form

contained under § 1731(c). That the Plaintiffs signed and dated the Travelers Rejection Form, which contains the verbatim statutory rejection language of § 1731(c), demonstrates that Plaintiffs knowingly and voluntarily waived underinsured motorist coverage under the Policy.

The remaining additional language, that is, the first and second paragraphs of the Travelers Rejection Form, creates no ambiguity, but rather serves to explain the nature of underinsured motorist coverage to Plaintiffs and to emphasize the gravity of Plaintiffs' decision to waive such coverage. The first paragraph of the Travelers Rejection Form provides:

> Underinsured motorists protection is insurance coverage you may purchase that protects only you and your family if you or they are injured by a negligent driver who does not have enough bodily injury liability insurance to cover your claims. This coverage is optional. However, we are required to include it in your policy unless you take steps to reject it.

Def.'s Br. in Supp. of its Mot. to Dismiss Ex. 2, Doc. 5. This language explains, in laymen's terms, what underinsured motorist protection is. Indeed, the explanation provided tracks the language of § 1731 itself, which reads:

> Underinsured coverage protects me and relatives living in my household for losses and damages suffered if injury is caused by the negligence of a driver who does not have enough insurance to pay for all losses and damages.

75 Pa. Stat. and Cons. Stat. Ann. § 1731(c). The first paragraph of the Travelers Rejection Form, thus, is consistent with § 1731.

The second paragraph of the Travelers Rejection Form provides:

> If you do not want this coverage, the insured named first on the application or the declarations page must sign and date the rejection of underinsured motorists protection below. If you want to keep this coverage, do not sign this waiver and go to the next page.

Def.'s Br. in Supp. of its Mot. to Dismiss Ex. 2, Doc. 5. This language tracks the additional language that the court in *Vinh Thanh Ho* concluded did not invalidate a rejection of coverage form because, rather than injecting ambiguity into the form, the language "serve[d] to clarify and

12

emphasize the gravity of the decision to reject UIM coverage." 30 F. Supp. 3d at 367. The Court concludes that just as the additional sentence in *Vinh Thanh Ho* served to clarify the import of the insured's execution of the rejection form, here, the second paragraph of the Travelers Rejection Form serves the same purpose and, indeed, emphasizes the gravity of Plaintiffs' decision to sign the Travelers Rejection Form. Accordingly, the second paragraph does not invalidate Plaintiffs' waiver.

Taken together, the first and second paragraphs do nothing to contravene the purpose of § 1731 as explained by the Pennsylvania Supreme Court. Rather, the two paragraphs appear consistent with the purpose of § 1731. The first and second paragraphs do not alleviate the insurer from its obligation to offer to its insured "the option of purchasing UIM coverage and to make certain that, if an insured decides to reject UIM coverage, the insured does so by signing a rejection form that explains what coverage the insured is waiving as a result of her decision." *Ford*, 154 A.3d at 240. Indeed, the first and second paragraphs echo the information provided in the statutory form language itself. The first and second paragraphs explain to the reader what underinsured motorist coverage is, that underinsured motorist coverage is automatic, and that the coverage may be waived only upon signing a rejection form. Thus, the Court concludes that Plaintiffs' execution of the Travelers Rejection Form was an effective waiver of underinsured motorist coverage and Plaintiffs' Complaint is dismissed.

Despite this conclusion, this Court, consistent with the Third Circuit Court of Appeals, the Pennsylvania Supreme Court, and various other courts, reiterate that it is "undoubtedly a 'better practice . . . for insurance companies . . . *not* to supplement the required language of § 1731.'" *Robinson*, 520 F. App'x at 89; *see also Ford*, 154 at 245 (providing that "it is ill-advised for an insurer to present an insured with a UIM coverage rejection form that changes the

statutory form in any way."). More than "better practice," it is best practice for insurance companies not to supplement the required language of § 1731 even if they believe such language might provide additional clarity to the statutory rejection language.

## IV. CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss is GRANTED and Plaintiffs' Complaint is DISMISSED WITH PREJUDICE. An appropriate order follows.